WILLETS v. POOR et al.

(Supreme Court, Appellate Division, Second Department.   December 30, 1910.)

1. CORPORATIONS (§ 117*)—SALES OF STOCK—ACTIONS FOR RESCISSION—SUFFI-
   CIENCY OF EVIDENCE.
      In an action to rescind a contract for the purchase of stock claimed to
   have been induced by false representations as to the status and earning
   capacity of the corporation, evidence *held* to show that certain conversa-
   tions with defendant relating to certain reports as to the financial condi-
   tion of the company were made after the sale of the stock.
      [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 506;  Dec.
   Dig. § 117.*]

2. CORPORATIONS (§ 117*)—SALES OF STOCK—RESCISSION—ACTIONS—ADMISSION
   OF EVIDENCE.
      In an action to rescind a contract for the purchase of stock on the
   ground that it was induced by misrepresentations as to the financial con-
   dition of the company, certain reports purporting to show the bad finan-
   cial condition of the company were improperly admitted in evidence,
   where defendant had no knowledge of such reports or their contents
   until some time after the sale of the stock.
      [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 506;  Dec.
   Dig. § 117.*]

3. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.
      Where, in an action to rescind a contract for the sale of stock because
   of false representations by the seller and for damages, the jury found
   generally for plaintiff, and did not find which of the alleged false repre-
   sentations were false to defendant's knowledge, it could not be said that
   certain alleged misrepresentations were sufficient to sustain the verdict
   for plaintiff, so as to make harmless error in admitting evidence of other
   misrepresentations.
      [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4153;
   Dec. Dig. § 1050.*]

      Hirschberg, P. J., and Woodward, J., dissenting.

Appeal from Trial Term, Westchester County.

Action by Howard Willets against Henry W. Poor, impleaded with
Mark R. Spelman and another.   From a judgment for plaintiff and an
order denying a new trial, the first-named defendant appeals.   Re-
versed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR,
THOMAS, and CARR, JJ.

Charles F. Brown, for appellant.
Charles K. Carpenter, for respondent.

BURR, J.   In November, 1904, Henry W. Poor was a member of
a firm doing business in the city of New York under the title of Henry
W. Poor & Co.   Mark R. Spelman and Henry V. Poor were his co-
partners, but Henry W. Poor's interest in said firm amounted to 90 per
cent. of the entire capital stock thereof.   There was also a firm doing
business in the city of Boston under the same firm name, of which
the said Henry W. Poor, Charles F. Cushman, and Frederick A. Far-
rar were the members.   In this firm Henry W. Poor had a one-third
interest.   Prior to the date above mentioned, the Boston firm of Henry

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

W. Poor & Co., in connection with another firm doing business in that
city under the name of S. D. Loring & Son, had purchased the entire
authorized issue of bonds of the Newton & Northwestern Railroad
Company of Iowa, and had disposed to other persons a considerable
portion thereof.   On the 22d of November the New York firm of
Henry W. Poor & Co. agreed to sell to plaintiff 250 of the bonds of
the said road of the par value of $1,000 each, and on the 2d day of De-
cember, in the same year, they were delivered to plaintiff, who paid
for them the sum of $243,368.06.   To enable them to make delivery,
the New York firm obtained from the Boston firm a sufficient amount
of the said bonds at a price somewhat less than that paid by plaintiff.
This action is brought to rescind the contract of sale to plaintiff upon
the ground of false representations made by defendant Henry W.
Poor, or by one Dennie M. Hare, which representations were the in-
ducing cause to plaintiff of such purchase.   The said Hare was in the
employ of the New York firm, and his relations to it were such that
a jury would be justified in finding that representations made by him
to plaintiff with respect to the said bonds were within the scope of his
authority, and binding upon the members of the said firm.   The jury
having found a verdict in favor of plaintiff for the sum of $277,-
899.94, this appeal is taken by the defendant Henry W. Poor from the
judgment entered on such verdict, and from an order denying a mo-
tion for a new trial.

The representations which it is claimed were made by or on behalf
of defendants are of two kinds:   First, written representations con-
tained in a prospectus which was issued some time in the latter part
of the year 1903 by the Boston firm of Henry W. Poor & Co., and a
copy of which was delivered by Hare to plaintiff at the time when ne-
gotiations were pending for the purchase and sale of said bonds; and,
second, oral representations made by defendant Henry W. Poor or
Hare as his agent.   It was conceded by plaintiff upon the trial that,
when this prospectus was issued, it was issued in good faith, and, so
far as the persons who subscribed the same then knew, the statements
contained in it were true.   But his present contention is that in No-
vember, 1904, when the prospectus was delivered to plaintiff, defend-
ant knew that some of the statements therein contained, and which
in November, 1903, were supposed to be true, were as matter of fact
false, and particularly was this the case respecting some of the state-
ments therein contained with regard to the cost per mile of the con-
struction of the road, the earnings of the road, and the extent and
quality of mineral deposits in coal properties owned or controlled by
it.   There was a sharp conflict of evidence whether Poor did or did
not make the statements which Hare testified that he did make, wheth-
er he authorized the delivery of the prospectus to plaintiff or whether
he knew that it had been delivered to him.   In view of this sharp con-
flict, it becomes our duty carefully to scrutinize the testimony that was
admitted as bearing upon the issues in this action, to determine that
no error was committed in connection therewith.

In order to prove that some of the statements contained in the pro-
spectus were false at the time that plaintiff contends it was delivered

to him, and to prove that defendant Henry W. Poor had information respecting the falsity thereof, plaintiff introduced in evidence certain reports made to the Railroad Commissioners of the state of Iowa under the provisions of a statute of that state, purporting to show the condition of the road. It was not claimed that Poor participated in making these reports, and his testimony that he never saw them until the time of the trial is not contradicted by any direct testimony. Plaintiff also introduced in evidence, with the same purpose and intent, certain monthly reports made by the officers of the company in Iowa to the firm of Henry W. Poor & Co. in Boston, showing the condition of the road, its earnings and expenses, and showing that the road was being operated at a loss, both in respect to its business as a common carrier and in connection with its mining properties. These reports are referred to as Exhibits A–1 to A–25 and B–1 to B–25. As to Exhibits A–1 to A–25, being statements made by officers of the company in Iowa as to the earnings and expenses of the Newton & Northwestern Railroad Company from October, 1902, to October, 1904, the court stated that they were simply received for the purpose of showing that defendant got notice of what the papers contained, not as establishing the contents of the papers themselves. No limitation was made as to the purpose or effect of Exhibits B–1 to B–25, which were monthly reports of the sales, earnings, and expenses of the Boone Coal & Mining Company, under which name the coal business of the road was being conducted. There is no direct evidence that defendant Poor, or either of the members of the firm of Henry W. Poor & Co. in New York, ever saw these reports. Poor makes positive denial that he had seen them, and asserts that he never had any information respecting the contents thereof. It was sought to connect Poor with knowledge of such contents by the testimony of Frederick A. Farrar, who was at one time vice president of the railroad company, and who was a member of the Boston firm. In his attempt to show that Farrar received these reports and communicated the contents thereof to defendant Henry W. Poor, plaintiff called him as a witness. He testified:

"During the period of my being an officer of this road [and it appears that he became such officer in June, 1904], I was more or less in communication and correspondence with Mr. Henry W. Poor of New York, with regard to the affairs of this railroad. Q. Did you send to him copies of the reports that you received from the operating officers of the road? A. I do not think all of them, many of them. Q. Did you send him many of them? A. I don't remember much about that personally."

He then testified that he was in the habit of going to New York very often, as often as once or twice a month, and when there frequently discussed with Poor the condition of this railroad, as he did other matters pertaining to their business. When asked specifically whether or not the information that came to him in these reports was discussed with Mr. Poor, he testified:

"I think very likely. I cannot remember definitely, I cannot say definitely whether it was or not. I cannot recall any conversation or the substance of any conversation with Mr. Poor on the subject of these reports or the information contained in these reports."

Again he testified that he discussed practically everything connected with the general condition of the road in a general way with Henry W. Poor as often as once or twice a month during the whole period that they were members of the firm in Boston. It might be urged with much force that testimony so indefinite in character in the face of Poor's positive denial that the contents of these reports or the subject-matter of the statements contained in them had ever been brought to his attention failed to sustain the burden of proof devolved upon plaintiff to establish by a fair preponderance of evidence the facts material to his contention. But the further testimony of Farrar makes it perfectly clear that whatever conversation he did have with Poor on the subject of these reports and the contents thereof was subsequent to the sale of these bonds. He testified:

"As treasurer and as director, I received constantly during the period that I was an officer reports from the operating officers of the road in Iowa. I received daily reports from them. I also received regular monthly statements. * * * Q. Did you receive those during the whole period of your being an officer? A. No.

"Q. Well, during what part of the period that you were an officer? A. I should think that we began to get our reports subsequent to the time of this meeting, when Meservey and the rest of them went out.

"Q. Subsequent to the stockholders' meeting in June, 1905? A. That would be my recollection of the matter.

"Q. You received daily reports beginning with the spring or early summer of 1905? A. I should say so, subsequent to these changes.

"Q. By changes you mean the election of Mr. Loring? A. Yes; and I think Mr. Meservey went out of the directory at that time."

Again he testifies:

"Mr. Loring and my firm took over the active management of the property in July, 1905. I think that is the date."

Defendant not only objected to the admission of these papers in evidence as being incompetent, but at the close of the case expressly requested the court to instruct the jury that the defendants were not "chargeable with knowledge of the facts contained in the reports made by the operating officers of said railroad company and sent to Henry W. Poor & Co. of Boston and Loring & Son of Boston and in evidence as plaintiff's Exhibits A–1 to A–25 and B–1 to B–25."

As the only foundation for a finding of the jury that Poor had such knowledge is based upon the testimony of Farrar, the exception to the admission of these papers and to the refusal of the court to charge the jury as requested was well taken, since, even if Farrar did communicate to Poor the whole of his knowledge based upon these reports, that knowledge was not obtained until some months subsequent to the sale of the bonds in question.

Respondent contends that the representations orally made by Poor, or by Hare, his agent, and particularly those representations made with reference to the pendency of negotiations for the sale of the Newton & Northwestern Railroad Company to the Chicago, Rock Island & Pacific Railroad Company, and which plaintiff contends had terminated before he was approached with reference to the purchase of these bonds, would be sufficient of itself to sustain the verdict of the jury, entirely independent of any other false and fraudulent representations

126 N.Y.S.—59

made in the case. The fact that any oral representations were made by Poor, or by Hare with his express authority, and the 'extent of Poor's knowledge in connection therewith, was a disputed fàct. The verdict was a general one. In the absence of specific findings by the jury, it is impossible for us to determine which of the various representations alleged to be false and fraudulent the jury decided were false, and which of those established as false were untrue within the knowledge of the defendant.

We have not considered various other objections and exceptions urged by defendant, for the reason that the error above referred to we deem fatal to the maintenance of the judgment.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event. All concur, except HIRSCHBERG, P. J., and WOODWARD, J., dissenting.

WOODWARD, J. (dissenting). The plaintiff demands damages alleged to have resulted from certain fraudulent representations made by the defendants, which induced him to purchase certain bonds issued by the Newton & Northwestern Railroad Company of the state of Iowa, of the par value of $250,000, for which the plaintiff paid the defendants the sum of $243,368.06. The facts as they appear from the evidence justified the jury in finding that the defendants placed a prospectus before the plaintiff for the purpose of inducing him to purchase the bonds, which prospectus was made in 1903, but without date, in which the affairs of the railroad company appeared to be in a very satisfactory condition, and one warranting the investment, while as a matter of fact the defendants were aware of the true conditions in 1904, at the time the prospectus was used, and they did not correspond in many of the essential details with the facts as stated in the prospectus. There was evidence in the case which tended to indicate that the prospectus was made and issued in good faith, and that there were no material misstatements of facts at the time it was made, but the evidence also shows that at the time the prospectus was made use of by the defendants it had been' fully demonstrated that the anticipations of the railroad company were not to be realized, and these facts were brought home to the knowledge of the defendants; at least, the evidence indicated that they had the fullest possible opportunities for knowing the facts, and that they had been discussed among the members of the defendant's banking concerns, of which he was a partner, both in New York and in Boston.

The principal questions arising on this appeal by the defendant Henry W. Poor relate to the charge of the court, and the exclusion and reception of evidence. It is claimed, in the first point, that the court erred in admitting in evidence the reports of the Newton & Northwestern Railroad Company to the Railroad Commissioners of Iowa, and in refusing to charge the defendant's request that:

"The defendant Henry W. Poor is not chargeable with knowledge of the facts contained in said reports to the Railroad Commissioners by reason of being a director of said railroad company."

The court refused to charge "in any other manner than I have heretofore charged in that respect," and to this the defendant excepted.

The defendant Henry W. Poor was a director of the Newton & North-western Railroad Company, and it was clearly competent, in establishing the fraudulent misrepresentations of the defendants, to show that the railroad company had made statements subsequent to the prospectus which went to show that the prospectus at the time of its use in 1904 did not correctly represent the known facts. The board of directors is the managing body of the corporation. It is called upon in the case of railroad corporations in most of the states to make a report of its condition at stated intervals, and it would be strange if a report thus made under the requirements of the law could not be offered in evidence to show that one of the directors, in selling the securities of the railroad company, acted fraudulently. It is very likely true that this is not the highest evidence, but it is clearly some evidence, and, as fraud is generally established by a series of facts and circumstances, rather than by direct evidence, it is one of the elements which it was proper for the jury to take into consideration. The court, I believe, had charged the law of the case upon this point. It was not bound to charge the detailed requests of the defendant where it had already covered the point.

It is also suggested that the court erred in admitting in evidence the so-called reports of business of the railroad company and of the coal earnings, and in denying the defendant's motion to strike out such evidence from the record. I am unable to discover error in these rulings. The evidence disclosed that these reports were in the possession of one of defendant's partners in the Boston firm, that some of them had been transmitted to the defendant at his New York office, and that the Boston partner had discussed these reports and the general condition of the railroad with the defendant Poor subsequent to the issuing of the prospectus in question, and prior to its use in inducing the plaintiff to make the investment. Bringing directly home to the defendant Poor the knowledge of these reports and their discussion certainly had a tendency to establish that he knew the representations of the prospectus to be false at the time they were made use of to induce the plaintiff to purchase.

It is likewise insisted that the court erred in refusing to withdraw the prospectus from the consideration of the jury, and in permitting the jury to base their verdict in any part upon a finding that any statement contained in said prospectus was false and untrue. It is doubtless true that the evidence did not disclose that there was any false statement in the prospectus as it was issued, but that did not make the prospectus incompetent evidence in this case, under the circumstances. The prospectus may not have contained any false statement of fact when made. It purported to be made up on the statements of others, and upon estimates made by those who were in a position to know, but the element of fraud entered into the transaction when the defendant Poor, knowing that the estimates had not been realized and that the statements were not in harmony with the then known facts, made use of the same to induce the plaintiff to purchase the bonds. For instance, it was not, so far as we know, false to say that a certain engineer had estimated that there was a given amount of coal available in the mines owned by the railroad company, but it

would undoubtedly be a fraudulent misrepresentation on the part of the defendant to make use of that statement at a time when he knew that no such amount of coal could be produced, and it was upon this basis that the whole transaction savored of fraud, and justified the jury in finding for the plaintiff. It was not error to retain the prospectus in evidence, because it was a necessary part of the case. It showed what had been represented, and the testimony disclosed that at the time this prospectus was made use of it could not' have been done in good faith, for the defendant knew that its statements were not to be realized.

I do not find reversible error in this case, and the judgment and order appealed from should be affirmed, with costs.

HIRSCHBERG, P. J., concurs.