(155 App. Div. 312.)

WILLETS v. POOR.

(Supreme Court, Appellate Division, Second Department. February 21, 1913.)

FRAUDULENT REPRESENTATIONS—SALE OF SECURITIES.

    In an action to recover for fraudulent representations on a sale of railroad securities, plaintiff *held* entitled to recover.

    Jenks, P. J., and Thomas, J., dissenting.

Appeal from Trial Term, Westchester County.

Action by Howard Willets against Henry W. Poor. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Affirmed.

See, also, 143 App. Div. 945, 128 N. Y. Supp. 1150.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Charles F. Brown, of New York City, for appellant.
Charles K. Carpenter, of New York City, for respondent.

WOODWARD, J. When this case was before this court upon a former appeal, the judgment entered upon the verdict of the jury for the plaintiff was reversed on the ground that it appeared from the

evidence that the admission of Plaintiff's Exhibits A1–A25, B1–B25, both inclusive, was improper, because the conversations of Farrar with the defendant were had subsequent to the sale of the bonds, the contract for the sale of which is sought to be rescinded because of alleged fraud on the part of the defendant. Willets v. Poor, 141 App. Div. 743, 126 N. Y. Supp. 926. It is conceded that this question is eliminated upon this appeal, but it is urged that the admission of these same exhibits was improper in any event, because Mr. Poor never saw any of these reports or copies of any of them, and that he was never told of them, or informed of their contents. It is true that Mr. Poor testifies to the above effect, but the jury were not bound to believe him, and there was evidence from which the jury might properly draw the inference that some, at least, of the reports or copies thereof were furnished to him, and that the contents of all of them were in substance talked over with Mr. Poor by his Boston partner, Mr. Farrar, who testified to this effect. It was not necessary or important upon the trial of this action to establish that these reports were true in fact, and they were not admitted for this purpose. They are in the case for the purpose of showing that the defendant had information, based on these reports, that the facts set forth in the prospectus delivered to the plaintiff in 1904 could not be relied upon. This prospectus, it will be recalled, was issued in 1903. No one pretends that this prospectus stated any untruths at the time it was issued, for it only purported to be estimates of what might be expected from the Newton & Northwestern Railroad and its coal properties in the state of Iowa, but it was not delivered to the plaintiff until late in 1904, at which time the defendant, who was a director of the railroad corporation, had been receiving, through his partner in Boston, the information contained in these exhibits. The Boston partner in the banking business was an officer of the railroad company. The defendant was a director in the company, and these monthly statements as to the affairs of the railroad company were sent directly to the Boston partner, and by the latter either sent or communicated in substance to the defendant at intervals of about two weeks during the year 1904 prior to the purchase of the bonds by the plaintiff. To say that this defendant, a director in the railroad company and a 30 per cent. partner in the Boston firm which was dealing in a large issue of these bonds, was ignorant of the general information contained in these reports, or that they were improperly introduced in evidence in support of the plaintiff's contention of fraud, seems to us without force. His own partner, a reluctant witness, testifies that he talked these matters over about every two weeks during the period with the defendant; that he conveyed all the information he had, and that the only information in his possession was that contained in these monthly reports, and, the only object of the reports being to show the information which the partner had and which he says he communicated, it seems to us plain that they were properly in the case. It was a part of the inside history of the transactions connected with the railroad, showing matters passing between an officer and a director, and, as it had a bearing upon the issue pre-

sented here, it would have been a gross injustice to the plaintiff if these reports had been excluded.

It is likewise urged that the court erred in refusing to withdraw the prospectus from the consideration of the jury. I considered that question in a dissenting opinion handed down upon the former appeal, and I see no reason for changing the position which I then took upon this question.

In the view I take of this case, it is not important to examine whether the verdict can be sustained upon the answers to the special questions. All of these were answered in favor of the plaintiff, and the general verdict, given upon competent evidence, is a sufficient foundation for the judgment. Whatever of force there might be in the contention that the court erred in permitting counsel to practically state to the jury the contents of letters which had been rejected as evidence is clearly obviated by the subsequent admission of these letters in evidence, many of them without objection. This proposition is sought to be met by urging that the letters were not properly admissible; that they were "no more admissible as evidence against the defendant than the reports of business which were discussed in point I," but we have already pointed out that such reports were admissible, and the record shows that the most important of these letters were admitted without objection on the part of the defendant, while the remaining letters were generally in answer to those which were in evidence without objection, and merely went to the completion of the correspondence, and this would seem to be required by fairness. The rule is well established that, where one party opens the way to the use of letters, documents, or conversation of a privileged or incompetent character, the opposing party has a right to fill out the gaps and make the communication complete, and it is not a long stretching of the rule to make it proper, where letters are introduced and accepted without objection, to permit the completing of the correspondence upon the particular subject. In the present case, I think the defendant has not been prejudiced by the matters put in to supplement and complete the communication, and that reversible error cannot be pointed out.

The discussion heretofore given of this action makes it unnecessary to pursue the subject further.

The judgment and order appealed from should be affirmed, with costs.

RICH, J., concurs. CARR, J., concurs in result. THOMAS, J., reads for reversal, with whom JENKS, P. J., concurs

THOMAS, J. (dissenting). For fraudulent representations made by Hare, an agent of H. W. Poor & Co. of New York, whereby the plaintiff was induced to purchase certain railway bonds of the Newton & Northwestern Railroad Company, recovery has been had against the appellant after a discontinuance of the action as to his copartners. That the statements, false to defendant's knowledge, were made by Poor to Hare and by the latter repeated to the plaintiff, the jury has

found in a general verdict. The jury, answering specific questions, found that the defendant or his agent, Hare, made the following statements on which the plaintiff in purchasing the bonds relied: (1) That the railroad company had earned the interest on its outstanding securities; (2) that negotiations were under way with the Chicago, Rock Island & Pacific Railway Company for the purchase of the Newton & Northwestern Railroad; (3) that the cost of such railway had not substantially exceeded $17,000 per mile. The specific finding is that defendant knew, or should have known, that such representations were untrue. Some of the misrepresentations conveyed to plaintiff were in the form of a prospectus, and some of them were made directly by Hare, although he asserted that his information came from Poor. The essential misstatements in the prospectus are (1) the estimated cost of the road at $17,000 per mile, whereas it cost $26,458, making a total increase of one million dollars; (2) a statement that the output of coal in lands owned by the railroad company and entering into the security of the bonds would be increased from 400 to 1,000 tons per day; (3) that the portion of the property in operation had earned fixed charges on the 80 miles of road under construction, whereas in November, 1904, it had appeared from the reports of the railroad company that from April to October, both inclusive, there had been an increasing deficit in the operation of the railway, as well as of the coal mine; (4) that the estimated profits per year would be $60,000, whereas the monthly reports showed a yearly deficit; (5) that the estimates of experts were that there were 1,100 tons per foot per acre, whereas the directors knew that coal mines never produced the estimated tonnage. The immediate representations of Hare were: (1) That the railroad earned the interest on its outstanding securities, whereas there was a deficit, and money for the payment of the interest was taken from the proceeds of bonds sold or advanced by H. W. Poor & Co. of Boston, in which firm defendant had an interest, or by S. D. Loring & Son of Boston, who with such H. W. Poor & Co. had purchased in great part the bonds and received therewith a majority of the stock; (2) that the statements in the prospectus were true at the time of the sale of the bonds, and could be relied upon; (3) that negotiations for the sale of the railway to the Rock Island Railroad Company were pending and would probably be consummated very shortly, and that the latter company was anxious to purchase, whereas former negotiations had resulted in a refusal to purchase or even to lease in the August preceding the sale, although they were resumed in 1905 without result; (4) that the railway in question was ballasted with gravel, whereof the company owned extensive pits, whereas it owned no pits at that time, and as late as March 21, 1905, only 50 miles had been ballasted with gravel. Aside from the specific questions submitted, it cannot be known definitely from the charge upon what issues the jury was permitted to pass.

The special questions submitted substantially cover the alleged misrepresentations made by use of the prospectus, save that relating to the estimated output of coal and the estimated contents of the coal field, and also cover the issues relating to the representations made by

'Hare save as to ballasting the railway with the company's gravel and the ownership of gravel beds. In such state of the record I will for the present confine the discussion to the special questions and the evidence relating to them.

Although Poor was a director of the company, he gave no official attention to its affairs, and had no knowledge of conditions, unless he obtained it from his firm in Boston, either by conversation or letters or reports sent to him or to his office. The New York firm previous to the sale in question had not dealt in the bonds save to the extent of $5,000, and the present bonds were bought for the special purpose of delivering the same to plaintiff after sale to him. The sale was in November, 1904, and the prospectus was issued in November, 1903, and as a prospectus it was issued at its date in good faith and its statements were not untrue. But by November, 1904, the retrospect showed that the prospectus of 1903 had proven false, and that estimates had failed. When, then, the undated prospectus was handed to plaintiff, it had been discredited by events, and its prophesies had been proven false. Hare amply represented to the plaintiff that the statements in the prospectus were true and could be relied upon, and he did it with such particularity and reference to verification of the prospectus by personal examination by parties named that the plaintiff was justified in believing that it was represented to him that the things once merely in prospect had become realities, and that expectations founded on best judgments had become facts. So far the use of the prospectus is unobjectionable. It may, however, be urged that the jury was permitted to find whether the mere "delivery of the prospectus to the plaintiff was not tantamount to a repetition of the estimates of November, 1903, and a representation of fact." It was not necessary to go so far, inasmuch as Hare assured plaintiff of the truth of the prospectus. The prospectus showed on its face what it was, and that it merely expressed the necessarily fallible judgments of those interested. It portrayed the future of the nonexistent railway, and coal fields not fully developed, when the one should have been constructed and the other facilitated thereby and more amply worked. And yet, if events showed that the enterprise had fallen disastrously short of the printed picture of the previous year, its delivery with knowledge was a deception, for thereby the things once worthy to influence investors had been proven misleading.

So, if the court left it to the jury to say whether the delivery of the document constituted a present statement, it was not error, although the delivery in connection with the oral representations of Hare was probably in the mind of the learned justice, for to the "testimony in this action" the request to charge called attention. Let it be assumed that the evidence justified the jury in finding that each of the representations in the special questions was made and was false. But was it proven false to the knowledge of the defendant by legal evidence? Did defendant in November, 1904, know that the railroad company had not earned the interest on its outstanding securities, that negotiations for sale to the Rock Island Company were not under way, that the cost of the railway exceeded $17,000 per mile.

To prove defendant's knowledge, there was received in evidence printed reports of business issued by the railroad company (Plaintiff's Exhibits A1 to A25, B1 to B25). They are monthly reports of the company, and concern the railway and coal mine. Whether they should have been admitted depends upon the evidence of Farrar, defendant's partner in the firm in Boston. Farrar saw Poor, and seemingly discussed twice each month the condition, progress, and future of the railway, and yet a careful scrutiny fails to disclose a single statement made by one man to the other. Did Farrar discuss with Poor the fact that the company had not earned the money to pay interest on its outstanding securities, or was that fact mentioned in any form or manner? I cannot find that it was. Farrar could not state any definite information that he imparted, but there was, as he says, a "discussion of the property as it was being operated, general results at that time. It was in a state of construction, and frequently when I was over there there might be a good month, and I would discuss that with him. And there might be a bad month, and we would discuss that, too. And there was a great deal of discussion about the Rock Island proposition. The discussion which I had with him about that was as to the progress of the negotiation and that sort of thing. I have stated now all that I can remember that I stated to Mr. Poor." In short, as he stated in another place, all that he knew he communicated twice each month to Poor. But what did he know and what did he say to Poor? That remains unanswered. To meet this deficiency, these reports were identified by Farrar, who stated that he sent some reports to Poor between the time when he began to receive them through 1906, and that all Farrar knew he got from the reports. There is no evidence, general or particular, that any one of these reports or a copy of it was sent to Poor, and yet each one of 50 reports is put in evidence showing in detail the monthly earnings of the railroad and mine. The argument of the plaintiff as understood is this: Farrar received these reports, and they were his sole sources of information. What information he had he gave to Poor. Hence Poor knew the contents of the reports, and therefore they are admissible to show that he knew each and everything they contain. Had Farrar read to Poor the reports or in any way communicated them to him, the usual foundation for their admission resulted, but Farrar's conclusion that he gave Poor what information he had, and that these reports were the sole sources of his information, does not show that Poor knew the contents of the papers. It was impossible for Farrar to state the details of the report in conversations, and he makes no pretense of having done so. Manifestly the reports were inadmissible. The evidence was vital as to the issue submitted to the jury on the first question, inasmuch as they show the earnings of the enterprise from October, 1902, to and including October, 1904, and if they state facts, and defendant knew their contents, he was aware that the representation that the company earned interest on its securities was untrue. They have no bearing on the second and third questions submitted, but they must have materially influenced the jury in passing upon Poor's knowledge of Hare's state-

ments that the company earned its interest on its outstanding securities. As it cannot be known in such case what representations charged to have been used by Hare the jury found in favor of plaintiff, the verdict cannot be sustained, unless upon the second or third special question submitted, or both of them. Did the defendant know that the representations were untrue? What is the evidence of it? The evidence of Farrar is the only reliance for such necessary proof. There had been a proposition for the sale of the railway to the Rock Island Company, but it had been rejected in August prior to the sale of the bonds, although negotiations were later resumed. Farrar testified that he knew of the negotiations. But Farrar did not give one item of information that he imparted to Poor with reference to the negotiations or the cost of the road per mile. I have already quoted his deliberate answer to the request that he give the substance of the information he repeated to him. The testimony cannot be read without instant conclusion that Farrar did not remember anything that he said to Poor, although he did remember that he had frequent conversations as to the conditions and progress of the road. But Poor, accused of fraud, was entitled to have it stated whether he was told of the suspended or ended negotiations and the cost per mile of construction before November, 1904, for it must be remembered that communications from Farrar to Poor were continued to 1906. Hence, the case has not sufficient evidence that the defendant knew the facts, to outweigh his statement that he did not know them.

But there is a further consideration. The questions are, "Did the defendant know or should he have known that the representation was untrue?" Did the jury find that he knew or that he should have known, or both? If he did not know, upon what could the answer be based that he "should have known"? He was a passive director. No information is imputed to him on that account. He as a partner had an interest in the Boston firm. No inference that he should have known flows from that relation, as he was a nonresident and nonparticipant in the affairs of its office. He sold the bonds as a dealer, after paying 92½ per cent. for them, and afterwards loaned a sum in some large degree upon their security. Why then should he have known? I find no evidence or agreement justifying the question submitted, or the answer given to it.

After an exception to the charge that "the jury are permitted to find fraud, on the ground that the defendant ought to have known that the representations were false," the court said:

"I said in matters that he ought to have known or should have known, or could have known. I do not mean to say he should have known. Where he had the means at hand and recklessly does it, carelessly does it, makes an assertion of fact that is not true; that is, that he did not know whether it is true or false, when he had means at hand to discover whether it is true or not."

This charge, which refers to a clearer statement in the main charge, is not properly submitted in the question under consideration, even if under the complaint the rule was properly invoked. The inquiry whether the defendant should have known finds no support in the evidence. But certain letters were admitted after their contents had

been brought to the knowledge of the jury by question embodying their contents. Such practice should not be permitted, whatever the admissibility of the letters. As several of the letters were admitted without objection, others that invited or answered them were not received so as to constitute reversible error. However, the letters were written between December 3, 1902, and March 17, 1904, and most of them before the prospectus was issued in November, 1903. As the truth of the statements in the prospectus at the time of its issue was not attacked, the letters could bear only in contradiction of parts of the defendant's testimony, and, if confined to that, their use is not criticised.

Summarized, the case is this: Poor, through Hare, is known to have made false statements, which gave apparent value to the securities, and induced their purchase. Poor, by his own testimony, is shown to have had no knowledge or information to justify the statements, and Hare asserts that he knew nothing save what Poor told him. Was Poor guilty of actionable fraud in making statements of matters of which he was conscious that he had no knowledge? Could such issue be submitted to the jury under the complaint? The complaint charges that the defendant knew the representation to be false. But, if he made statements whereof he knew that he did not know the truth, then he put out a false statement, and fraudulently stated that he knew it to be true. The difference between knowing that the statement was false, and knowing that he falsely said. it was true, is not great in its moral or legal quality, and yet the two propositions are opposite. If he knew it to be false, he could not have made it without knowledge that it was false, and a jury could not affirm both knowledge and known lack of knowledge. I therefore consider that amendment of the complaint was necessary if that rule of law would be invoked. But, if the pleading permits the submission of such question, yet it cannot be known whether the jury based its general verdict upon Poor's fraudulent statement of facts that he did not know, as it is also found that he knew the statements to be false, and I consider that there is no legal evidence to support such finding of known false representations. It is noticeable that there was failure, seemingly not inadvertent, to ask Farrar whether he told Poor that the railway and mine had not earned the interest, or that the estimated cost had been exceeded, or whether he had discussed with him such and similar matters. When Farrar's recollection had been exhausted, it was proper to direct the inquiry specifically to such matters, and enforce answer, unless Farrar's recollection failed in respect to them.

In view of the condition of the record, the judgment and order should be reversed, and a new trial granted, costs to abide the event.